380 S.E.2d 444

**George Sumner SEGAL**

**v.**

**Margaret Jane Segal BEARD.**

**No. 18378.**

Supreme Court of Appeals of West Virginia.

April 19, 1989.

---

Robert A. Yahn, Wheeling, for Margaret Jane Segal Beard.

Robin J. Davis, Hostler and Segal, Charleston, for George Sumner Segal.

**McHUGH, Justice:**

This appeal raises novel issues with respect to the subject matter jurisdiction of family law masters and with respect to notice of a family law master's recommended decision. This appeal also raises the issue of the subject matter jurisdiction of a circuit court in a proceeding to modify a divorce decree when the modification proceeding does not involve alimony, child support or child custody. We reverse the ruling in question for the reasons hereinafter set forth.

I

The appellant, Margaret Jane Segal Beard, and the appellee, George Sumner Segal, were divorced in April, 1984. The ground for the divorce was irreconcilable differences. No children were born of their marriage. The divorce decree "ratified" the parties' property settlement agreement and expressly "merged" that agreement into the divorce decree.[1] In the property settlement agreement the appellant waived all rights to alimony, "past, present and future." The property settlement agreement was silent as to income tax liabilities of the parties and provided that the appellee was to permit the appellant to use a condominium located in Florida "for one or two weeks twice a year" for so long as the appellee maintained ownership thereof. The appellee and a third party, his business partner, were coowners of that condominium.

The appellee refused to permit the appellant to use the condominium in Florida for

---

1. The language of the divorce decree on ratification of the property settlement agreement is: "It is further Ordered that the Property Set-tlement Agreement ... is hereby ratified, approved and confirmed by the Court and merged into this order of Final Judgment."

over a year after the divorce was final. The appellant then filed a petition for contempt of court. In ruling on the contempt petition the Circuit Court of Monongalia County ("the trial court") clarified the divorce decree and the property settlement agreement upon which it was based by setting specific periods for the appellant to use the condominium in Florida, specifically, two seven-to-ten-day periods, one commencing on the third Sunday in April and one commencing on the second Sunday in November.

A few weeks later, the appellee, in February, 1987, petitioned for modification of the divorce decree. The appellee sought a change in the periods during which the appellant could use the condominium in Florida, alleging that her use of the condominium in Florida in November interfered with the peak rental period.

The appellee also sought in his petition for modification that the court hold the appellant responsible for half of a federal income tax liability of $34,923.08, for the years 1976 through 1979, which was during the parties' marriage. The appellee had received notice of and had paid the assessment of the tax deficiency (for disallowed deductions) after entry of the divorce decree.

The appellant answered the appellee's petition for modification. She asserted lack of personal jurisdiction on the ground that there had not been personal service of that petition in New York where she resides. She also asserted that neither the family law master nor the circuit court had subject matter jurisdiction under the divorce statutes to hear the matters pertaining to modification of the use of the real property in question and pertaining to the federal income tax liabilities of the parties, for neither of those matters involved alimony or child custody, child support or visitation. She also asked for recovery of reasonable attorney's fees of $500.00, due to the lack of personal and subject matter jurisdiction.

The appellee's petition for modification was eventually brought on for hearing before a family law master on August 10, 1987. The appellant was not personally present at the hearing and her attorney had another attorney, not associated with him, to make a special appearance to contest jurisdiction. That substitute attorney left the hearing upon learning that the family law master was going to hear evidence on the merits and not on jurisdiction.

After the hearing the appellee's attorney, on behalf of the family law master, prepared a proposed recommended decision and a proposed court order, both granting the relief requested by the appellee, that is, imposing upon the appellant liability for half of the federal income tax deficiency in question as well as changing the periods during which the appellant was to use the Florida condominium from stated times in April and November to stated times in May and October.[2]

The appellee's attorney mailed to the appellant's attorney a copy of the proposed recommended decision and of the initial draft of the proposed court order. This mailing was on August 13, 1987.[3] The

---

**2.** An exhibit in the record discloses that the rental rates for the Florida condominium in November and April are at the lowest and next-to-lowest levels, respectively, during the calendar year. This evidence clearly undermines the appellee's claim that the initial specification of dates in April and November as the periods for use by the appellant was detrimental to the appellee in that it interfered with the peak rental period.

**3.** The appellant's attorney admits that he received a copy of the *proposed* recommended decision of the family law master and of the initial draft of the proposed court order, shortly after August 13, 1987. Pursuant to the request of the appellant's attorney on August 28, 1987,

the initial draft of the proposed order was modified to note the appellant's objection and exception. The appellant's attorney thereafter signed the proposed order as having inspected it, and the appellee's attorney submitted the proposed order as modified and the *proposed* recommended decision to the family law master on September 8, 1987. The family law master made no changes in the proposed recommended decision.

Under *W.Va.Code,* 48A–4–4(d) [1986], a recommended decision of a family law master includes (1) a statement of findings and conclusions, and the reasons or basis therefor, and (2) the proposed court order embodying the appropriate sanction, relief or denial thereof. Under *W.Va.Code,* 48A–4–5 [1986], the circuit court,

recommended decision was filed by the family law master on or after September 8, 1987, but the appellant's attorney was not notified of the *filing* until a date not specified in the record.

On September 22, 1987, the appellant's attorney served and filed a motion for reconsideration of the family law master's recommended decision. After receiving no ruling on such motion, the appellant's attorney, on October 2, 1987, served and filed a petition for review by the trial court of the master's recommended decision. The trial court subsequently adopted the recommended decision of the family law master, without specifying its reasons for agreeing with such decision.

## II

The first assignment of error is that the family law master lacked jurisdiction to hear a petition for modification of an order when the modification proceeding does not involve spousal support or child support, child custody or child visitation. We agree.

*W.Va.Code,* 48A-4-1(i)(4) [1986] provides for the jurisdiction of a family law master in a modification proceeding:

(i) A circuit court or the chief judge thereof shall refer to the master the following matters for hearing to be conducted pursuant to section two of this article:

....

(4) All petitions for modification of an order involving child custody, child visitation, child support or spousal support filed after the first day of December, one thousand nine hundred eighty-six[.]

The jurisdiction of a family law master is purely statutory; he or she has no inherent powers. *Cf. Starcher v. Crabtree,* 176 W.Va. 707, 708, 348 S.E.2d 293, 294 (1986), and *State ex rel. Watson v. Rodgers,* 129 W.Va. 174, 176, 39 S.E.2d 268, 269 (1946) (circuit courts have no inherent powers in divorce cases, but, rather, purely statutory powers in such cases). It is clear that the powers possessed by a family law master are restricted to those conferred by statute. First, a "circuit court shall not follow the recommendation, findings, and conclusions of a master found to be: ... (3) In excess of statutory jurisdiction, authority, or limitations. or short of statutory right[.]" *W.Va.Code,* 48A-4-10(c) [1986]. Second, the relatively limited grant of powers to a family law master in *W.Va.Code,* 48A-4-1(i) [1986] is in contrast with the broad grant of powers to a divorce commissioner in *W.Va.Code,* 48-2-25 [1969].[4] Third, the provisions on family law masters are part of the Family Obligations Enforcement Act,[5] the purpose of which is to improve and facilitate the enforcement of

---

not the family law master, enters the order, except a family law master has the power under *W.Va.Code,* 48A-4-3(b) [1986] to enter *pendente lite* support and custody orders.

While the family law master may, in his or her discretion, require the parties to submit proposed findings and conclusions, *see W.Va. Code,* 48A-4-4(b) [1986], the family law master, not counsel, should have prepared the recommended decision, including the proposed court order, *see infra* note 13, and any exceptions should have been noted for the first time in the petition for review after the recommended decision was filed.

**4.** The pertinent portion of *W.Va.Code,* 48-2-25 [1969] provides:

[T]he court may, in its discretion, refer it [an action for divorce, annulment or separate maintenance] to one of the commissioners of such court, or to a special commissioner, who shall take and return the testimony in such action, with a report of all such facts as the

commissioner may be able to obtain as to property rights of the parties, their income, their character, conduct, health, habits, their children, their respective places of residence from the time of their marriage up to the time of such report, and any other matter deemed necessary by the court, together with his recommendation concerning whether a divorce, annulment or affirmation, as the case may be, should be granted, and concerning any other matter on which the court may request his recommendation.

In syllabus point 2 of *Nagy v. Oakley,* 172 W.Va. 569, 309 S.E.2d 68 (1983), this Court set forth three criteria for the reference of a case to a divorce commissioner, including a sufficient workload in the circuit court to justify the employment of commissioners and the ability of the litigants to pay a commissioner without an undue financial burden.

**5.** *See W.Va.Code,* 48A-1-1 [1986].

child and spousal support obligations, especially child support.[6]

The appellee argues that certain language in *W.Va.Code,* 48A–4–1(i)(3) [1986] supports his position that the family law master had jurisdiction in this case with respect to modifying the divorce decree to change the appellant's use of the property in question and with respect to modifying the divorce decree to impose upon the appellant liability for half of the federal income tax deficiency.[7] We disagree with the appellee's argument. The appellee's characterization of this paragraph is not accurate. It does not authorize a circuit court to refer "domestic matters" (the appellee's language) to a family law master. It, instead, authorizes a circuit court to refer to a family law master motions for *pendente lite* relief affecting child custody, visitation, child support or spousal support. This paragraph obviously has nothing to say about the powers of a family law master in a modification proceeding.

The appellee's argument that *W.Va. Code,* 48A–4–2(d) [1986] empowers a family law master to hear the matters in question in a modification proceeding is not sound. The appellee relies upon this language in section 2(d): "In determining claims for money due or the amount of payments to be made, when a party will not be prejudiced thereby, the master may adopt procedures for the submission of all or part of the evidence in written form." *W.Va. Code,* 48A–4–2 [1986] confers no jurisdiction upon a family law master; it merely sets forth the hearing procedures a family law master may use once a matter has been properly referred to him or her under *W.Va.Code,* 48A–4–1(i) [1986].[8]

Finally, this Court finds unpersuasive the appellee's argument that the following language from *W.Va.Code,* 48A–4–11 [1986] confers the jurisdiction in question upon a family law master: "The expedited process set forth herein is modeled upon traditional equity practice in this state which has utilized commissioners in chancery, masters, master's reports and recommended decisions, authoritative review by the circuit courts and other devices of an equitable nature." This language confers no jurisdiction upon a family law master; *W.Va. Code,* 48A–4–1(i) [1986] does involve subject matter jurisdiction, and it does not confer the jurisdiction in question. This

6. *W.Va.Code,* 48A–1–2 [1986] states the legislative purpose and intent of the Family Obligations Enforcement Act:

It is the purpose of the Legislature in enacting this chapter to improve and facilitate support enforcement efforts in this state, with the primary goal being to establish and enforce reasonable child support orders and thereby improve opportunities for children. It is the intent of the Legislature that to the extent practicable, the laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care.

Similarly, *W.Va.Code,* 48A–4–11 [1986] provides in relevant part: "In order to comply with federal law regarding child support enforcement, it is incumbent upon the Legislature to create an expedited process for obtaining and enforcing child support orders."

*See also Starcher v. Crabtree,* 176 W.Va. 707, 707–08, 348 S.E.2d 293, 293–94 (1986).

7. The exact language of *W.Va.Code,* 48A–4–1(i)(3) [1986] is as follows:

(i) A circuit court or the chief judge thereof shall refer to the master the following matters for hearing to be conducted pursuant to section two of this article:

. . . .

(3) All motions for pendente lite relief affecting child custody, visitation, child support or spousal support filed on or after the first day of November, one thousand nine hundred eighty-six, wherein either party has requested such referral or the court on its own motion in individual cases or by general order has referred such motions to the master: Provided, That if the circuit court determines, in its discretion, that the pleadings raise substantial issues concerning the identification of separate property or the, division of marital property which may have a bearing on an award of support, the court may decline to refer a motion for support pendente lite to the family law master[.]

8. Almost all of the nine paragraphs of *W.Va. Code,* 48A–4–1(i) [1986] involve child or spousal support, and these matters would result in hearings properly before a family law master to "determin[e] claims for money due or the amount of payments to be made," the language appearing in *W.Va.Code,* 48A–4–2(d) [1986]. *See W.Va.Code,* 48A–4–1(i)(1)–(4), (6)–(8) [1986]. Paragraphs (5) and (9) do not involve modification proceedings; they involve cases matured for final hearing prior to entry of the original divorce decree.

and other language in *W.Va.Code*, 48A–4–11 [1986] seems to be a plea by the legislature to this Court for us not to declare the current Family Obligations Enforcement Act unconstitutional as we did its predecessor in *Starcher v. Crabtree*, 176 W.Va. 707, 348 S.E.2d 293 (1986). The constitutionality of the current Act is not before us in this case.

Based upon the foregoing discussion, this Court holds that a family law master lacks jurisdiction to hear a petition for modification of an order when the modification proceeding, as here, does not involve child custody, child visitation, child support or spousal support. *W.Va.Code*, 48A–4–1(i)(4) [1986].

### III

■ The second assignment of error is that the trial court lacked jurisdiction under *W.Va.Code*, 48–2–15(e) [1986] to modify a divorce decree when the modification proceeding does not involve alimony, child support or child custody. We agree.

The jurisdiction of a circuit court over the property of the parties which arises "from the fact of a divorce proceeding having been brought is a pure creature of the statute." *Selvy v. Selvy*, 115 W.Va. 338, 341, 177 S.E. 437, 439 (1934), *questioned on another point, LaRue v. LaRue*, 172 W.Va. 158, 166 & n. 10, 304 S.E.2d 312, 319 & n. 10 (1983). *See also McKinney v. Kingdon*, 162 W.Va. 319, 321, 251 S.E.2d 216, 217 (1978). *W.Va.Code*, 48–2–15(e) [1986] is the statute on proceedings for modification of divorce decrees held before a circuit court. Under that statute, as under its predecessors since the 1931 revision of the *Code*, a circuit court originally granting a divorce is vested with continuing subject matter jurisdiction to modify or alter its original order as to alimony, child support or child custody, as the altered circumstances of the parties or the benefit of the children may require. *State ex rel. Ravitz v. Fox*, 166 W.Va. 194, 197, 273 S.E.2d 370, 372 (1980). *See also Stillings v. Stillings*, 167 W.Va. 796, 801, 280 S.E.2d 689, 692 (1981).[9]

In a divorce action, except when the rule is altered by statute, a judgment providing for, or approving the parties' agreement as to, the property rights of the respective parties—unlike a judgment governing alimony—may not be modified or vacated af-

---

9. The language of *W.Va.Code*, 48–2–15(e) [1986] is as follows:

(e) At any time after the entry of an order pursuant to the provisions of this section, the court may, upon the verified petition of either of the parties, *revise or alter such order concerning the maintenance of the parties, or either of them,* and make a new order concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice; and the court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, *revise or alter such order concerning the custody and maintenance of the children,* and make a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require. *In granting such relief,* the court may, where other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of alimony, child support or child custody or necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.
(emphasis added by us)

Prior to amendment in 1984, the portion of *W.Va.Code*, 48–2–15, as amended, relating to the modification of orders was virtually identical to the current subsection 2(e), except that the following language appeared in lieu of the present language beginning with, "In granting such relief ...": "For the purpose of making effectual any order provided for in this section the court may make any order concerning the estate of the parties, or either of them, as it shall deem expedient."

The provisions of *W.Va.Code*, 48–2–21 [1969], on the restoration of certain property to each spouse, and the provisions of *W.Va.Code*, 48–2–32 [1984], on the equitable distribution of marital property in a case in which there is no valid separation agreement (property settlement agreement), are not pertinent to the determination of subject matter jurisdiction in modification proceedings; those two sections involve subject matter jurisdiction in arriving at the original divorce decree. The legislature has provided separately for the subject matter jurisdiction of circuit courts in modification proceedings.

ter it becomes final, in the absence of fraud, coercion, mistake or other grounds on which judgments in general may be modified or vacated. 27C C.J.S. *Divorce* § 594 (1986) (collecting cases from the approximately thirty jurisdictions deciding the issue). *See also* 2 H. Clark, *The Law of Domestic Relations in the United States* §§ 19.13, at 465–66, 16.1, at 179, and 17.6, at 275 (2d ed. 1987); 4 *Family Law and Practice* §§ 52.01[3][a], 52.04[1] (A. Rutkin gen. ed. 1987); 24 Am.Jur.2d *Divorce and Separation* §§ 958, 846 (1983). Stated more concisely, "[i]n the absence of statutory authorization to modify a judgment dividing marital property, the courts [acting as domestic relations courts] are without jurisdiction to do so." *Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me.1983). Moreover, this rule applies even when the circumstances of one or both of the parties have unexpectedly changed:

> [W]hether these property rights be fixed by the terms of the decree or by the terms of the contract [the property settlement agreement], the court is without power [under the domestic relations statutes] to divest these property rights because of the changed condition of the parties or the subsequent misconduct of the parties or either of them.

*Gloth v. Gloth*, 154 Va. 511, 550, 153 S.E. 879, 891 (1930). In short, the finality of judgments is more critical with respect to property interests than with respect to alimony, child support or child custody.[10]

The appellee argues that the second sentence of *W.Va.Code*, 48–2–15(e) [1986], *see supra* note 9, provides to a circuit court the subject matter jurisdiction in a modification proceeding to alter the appellant's use of the former marital property in question and to impose upon the appellant her share of the liability for a federal income tax deficiency for years during the marriage. The appellee stresses the statutory language authorizing modification of a divorce decree with respect to the distribution of marital property when "necessary to avoid an inequitable or unjust result which would

be caused by the manner in which the modification will affect the prior distribution of marital property."

Placing this language in context, however, this Court concludes that the only modifications authorized by this statute, *W.Va.Code*, 48–2–15(e) [1986], are modifications involving alimony, child support or child custody, as set forth in the first sentence of that statute. This conclusion is reached by giving effect to the words at the beginning of the second sentence, referring to the relief authorized by the first sentence: "In granting such relief, ..." The remainder of the second sentence, including the language relied upon by the appellee, is thus expressly hinged upon a modification involving alimony, child support or child custody, and the redistribution of the former marital property, if still held by the parties, is allowed either to (1) *give effect to* a modification of alimony, child support or child custody or to (2) *avoid* an *inequitable* or unjust *result* which would be caused by the manner in which the *modification of alimony, child support or child custody* will affect the prior distribution of the former marital property.

The appellee's reliance upon *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987), and *Grijalva v. Grijalva*, 172 W.Va. 676, 310 S.E.2d 193 (1983), is misplaced. Both of those cases involved modification of alimony and child support, not property interests. The appellee's reliance upon *Cross v. Cross*, 296 S.C. 474, 374 S.E.2d 178 (1988), is also misplaced. That case held the trial court, in arriving at its *original* divorce decree, should have offset income taxes paid against the equitable division award. A modification proceeding was not involved therein.

Accordingly, we hold that a circuit court lacks jurisdiction under *W.Va.Code*, 48–2–15(e) [1986] to modify a divorce decree when the modification proceeding does not involve alimony, child support or child custody.

■ The appropriate procedure for obtaining postjudgment relief from a decree

---

**10.** The case of *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978), which, *inter alia,* restated the general rule of the continuing jurisdiction of a circuit court to modify alimony, provides no guidance here because it dealt with alimony, not property interests.

dividing marital property is a motion, addressed to the general equity jurisdiction of the circuit court, for relief from judgment, pursuant to *W.Va.R.Civ.P.* 60(b).[11] *See, e.g., Wardwell v. Wardwell,* 458 A.2d 750, 752–53 (Me.1983); *Selvy v. Selvy,* 115 W.Va. 338, 343, 177 S.E. 437, 439 (1934), *questioned on another point, LaRue v. LaRue,* 172 W.Va. 158, 166 & n. 10, 304 S.E.2d 312, 319 & n. 10 (1983). Alternatively, as mentioned in *W.Va.R.Civ.P.* 60(b), an aggrieved party may bring an independent action seeking equitable relief from a final judgment. *See* syl. pts. 1–3, *N.C. v. W.R.C.,* 173 W.Va. 434, 317 S.E.2d 793 (1984) (stating elements of such action in action to reopen divorce decree to challenge paternity); *Kallstrom v. Kallstrom,* 265 Or. 481, 509 P.2d 1195 (1973) (independent action by divorced husband against former wife for reformation of property settlement agreement because of alleged mutual mistake as to liability for unknown federal income tax deficiency for years during marriage). It is clear that neither one of these procedures was utilized in the present case.

## IV

■ The appellant also raises the issue of whether the tenday period for petitioning for review of a family law master's recommended decision is tolled until an aggrieved party is served with notice of the filing of the recommended decision. This Court holds in the affirmative.

Under *W.Va.Code,* 48A–4–6 [1986], the recommended decision of a family law master is subject to review by the circuit court upon the filing of a petition for review.[12] The first sentence of *W.Va.Code,* 48A–4–7(a) [1986] states the period within which any petition for review is to be filed: "Within ten days after the recommended decision of a master is returned and *filed,* any party may file exceptions thereto in a petition requesting that the action be reviewed by the circuit court upon the master's report." (emphasis added) Until the recommended decision is filed it is subject to completion and revision by the family law master. Therefore, contrary to the appellee's assertion, the period for petitioning for review by the circuit court does *not* commence prior to the filing of the recommended decision, such as when the parties submit and serve notice of any proposed findings and conclusions under *W.Va.Code,* 48A–4–4(b) [1986].[13]

After the family law master files the recommended decision, procedural due pro-

**11.** *W.Va.R.Civ.P.* 60(b) provides:

(b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the

finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

**12.** Under *W.Va.Code,* 48A–4–10(a)(1) [1986], the circuit court shall review the family law master's recommended decision when no petition for review has been timely filed or when the parties have expressly waived the right to file a petition.

**13.** We note that the family law master's duty under *W.Va.Code,* 48A–4–4(b) and (d) [1986] is to make a recommended decision, including a statement of findings and conclusions, and the family law master "should not surrender or

cess, *U.S. Const.* amend. XIV and *W.Va. Const.* art. III, § 10, requires the ten-day period for filing a petition for review by the circuit court to be tolled until service of notice of the filing of the recommended decision.[14] A fundamental element of "due process of law" is an opportunity to be heard, for example, with respect to the taking of property, and an opportunity to be heard, here upon petition for review by the circuit court, " 'has little reality or worth unless one is informed that the matter is pending and can choose for himself [or herself] whether to ... contest.' " *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1975), *quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). *Cf.* syl., *State ex rel. Peck v. Goshorn,* 162 W.Va. 420, 249 S.E.2d 765 (1978) (procedural due process requires notice of *de novo* hearing in circuit court upon appeal from magistrate court).

The legislature in the last paragraph of *W.Va.Code,* 48A–4–11 [1986] expressly recognizes "that the portions of this legislation [on proceedings before a family law master] relating to pleading, practice and procedure shall have force and effect only as rules of court and remain in effect unless and until modified, suspended or annulled by rules promulgated by" this Court. Until such rules are promulgated, procedural due process requires service of notice of the filing of the family law master's recommended decision. Consequently, this Court holds that the ten-day period for filing a petition for review of a family law master's recommended decision, *W.Va. Code,* 48A–4–7(a) [1986], is tolled until an aggrieved party is served with notice of the filing of the recommended decision. The family law master must serve notice of the filing of the recommended decision. Service of such notice shall be in the same manner as service of papers after the original complaint as set forth in Rule 5(b) of the *W.Va.R.Civ.P.* [15]

V

The appellant seeks to recover the reasonable attorney's fees incurred by her in this case. She asserts that she is entitled to recover her reasonable attorney's fees because the family law master and the circuit court lacked subject matter jurisdiction. In essence the appellant claims that the modification proceeding was frivolous and vexatious. We disagree. The issue of the family law master's subject matter jurisdiction, for example, is a matter of first impression for this Court and the other issues also raised substantial questions of law. The controlling principles are stated in syllabus points 3 and 4 of *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986):

3. There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.

delegate that important function by any mechanical adoption of the findings [and conclusions] prepared by counsel[.]" Syl. pt. 1, in part, *South Side Lumber Co. v. Stone Construction Co.,* 151 W.Va. 439, 152 S.E.2d 721 (1967) (same principle applicable to trial courts).

14. *U.S. Const.* amend. XIV, § 1 provides in relevant part: "No State shall ... deprive any person of ... property, without due process of law[.]" *W.Va. Const.* art. III, § 10 provides in virtually identical terms that "[n]o person shall be deprived of ... property, without due process of law[.]"

15. *W.Va.R.Civ.P.* 5(b) provides:
(b) *Same: How made.*—Whenever under these rules service is required or permitted to be made upon a party represented by an attorney of record the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last-known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule means: Handing it to the person to be served; or leaving it at his office with his clerk or other person in charge thereof; or, if the office is closed or the person to be served has no office, leaving it at his usual place of abode with some member of his family above the age of 16 years. Service by mail is complete upon mailing.

4. Bringing or defending an action to promote or protect one's economic or property interests does not *per se* constitute bad faith, vexatious, wanton or oppressive conduct within the meaning of the exceptional rule in equity authorizing an award to the prevailing litigant of his or her reasonable attorney's fees as 'costs' of the action.

We therefore decline to award the reasonable attorney's fees requested.

For the reasons set forth in this opinion the final order of the trial court is reversed.

Reversed.