402 S.E.2d 508

**Robert L. WAGONER**

v.

**Tracy L. WAGONER.**

**No. 19744.**

Supreme Court of Appeals of West Virginia.

Feb. 26, 1991.

**604**

LaVerne Sweeney, Grafton, for Robert L. Wagoner.

Delby B. Pool, Clarksburg, for Tracy L. Wagoner.

PER CURIAM:

The appellant, Robert L. Wagoner, appeals an order of the Circuit Court of Barbour County, dated May 31, 1990, which changed the custody of the parties' children from the appellant to the appellee, Tracy L. Nungesser (formerly Tracy L. Wagoner). The appellant contends that the custody of the children should remain with him. Upon review of the record, we cannot conclude that the circuit court abused its discretion by ordering the change in custody, and accordingly, we affirm the circuit court.

The parties were divorced by order entered on February 10, 1987, and a property settlement agreement executed by the parties was incorporated into the divorce decree. Pursuant to the property settlement agreement, the parties agreed that the appellant would be awarded custody of the parties' two daughters, Tonya and Amy,[1] and that the appellee would be allowed liberal visitation with the children. The agreement also contained the following provision:

> It is also contemplated that at a date in the future the Wife shall desire to have the care, custody and control of the said children restored to her and to have them reside with her, and she shall have the right to petition the Circuit Court of Barbour County, West Virginia, to change the care, custody and control of the said children to her if the parties are unable to reach an agreement concerning the change of custody.

The final decree also provided that, in the event the appellee would regain custody, the appellant would then have the visitation privileges set forth in the agreement. The circuit court retained continuing jurisdiction as to the visitation.

The appellee then moved to Centerville, Virginia. She obtained employment there, and subsequently remarried in June of 1988. The appellant also remarried in May of 1988, and his second wife and her son moved into the appellant's home. However, the appellant and his second wife separated approximately four months later.

In the fall of 1988, the appellee informed the appellant that she wanted to regain custody of the children. The appellant requested that the appellee wait until the school year was completed, at which time the children would go to Virginia to visit the appellee during the summer vacation. After the childrens' visit in the summer of 1989, the appellee again advised the appellant that she wanted to regain custody of her children. The appellant refused to relinquish custody of the children.

On February 22, 1990, the appellee filed a petition for modification of the final divorce decree which awarded custody of the children to the appellant. A hearing was held before the family law master on March 26, 1990. In a recommended decision dated April 26, 1990, the family law master stated that a change of custody was in the best interests of the children, and that it was consistent with the intent of the parties at the time they executed the property settlement agreement reserving the appellee's right to petition for a change of custody. By order entered on May 31, 1990, the circuit court awarded custody of the children to the appellee on the basis of the family law master's recommendation. It is from that order that the appellant now appeals.

The circuit court originally granting a divorce is vested with continuing subject matter jurisdiction to modify or alter its original order regarding child custody as the altered circumstances of the parties or

---

1. Tonya is now nine years of age, and Amy is now six years of age.

the benefit of the children may require. *Segal v. Beard,* 181 W.Va. 92, 97, 380 S.E.2d 444, 449 (1989); *State ex rel. Ravitz v. Fox,* 166 W.Va. 194, 197, 273 S.E.2d 370, 372 (1980). Moreover, we have consistently recognized in cases involving a change of custody: "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the children." Syl. pt. 2, *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977).

The circuit court's discretion in determining custody issues will not be disturbed on appeal unless it clearly appears from the record that the court abused its discretion, as we stated in syllabus point 4 of *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977), *overruled on another point, Patterson v. Patterson,* 167 W.Va. 1, 5 n. 1, 277 S.E.2d 709, 712 n. 1 (1981):

> In a contest involving the custody of infant children, their welfare is the guiding principle by which the discretion of the trial court will be controlled and on appeal, its determination of custody will not be set aside unless there was a clear abuse of discretion.

*See also* syl. pt. 2, *Lambert v. Miller,* 178 W.Va. 224, 358 S.E.2d 785 (1987).

In the case now before us, there was substantial evidence presented to the family law master at the hearing. Both of the children's teachers testified that Tonya and Amy are good students who are well-adjusted and well-liked by their classmates.[2] Tonya's second-grade teacher, Howard Post, described Tonya as "mostly an A student with a few B's thrown in." Mr. Post observed that Tonya is very friendly with the other students, and testified that she "gets along real well with her classmates."

Patty Cleavenger, Amy's kindergarten teacher, testified that initially Amy was very shy, but that now "she is a leader in the class." Ms. Cleavenger stated that "[t]he children all like her," and that "[a]cademically she is doing well." Ms. Cleavenger described Amy as "just a very well[-]rounded student."

Furthermore, there was testimony given at the hearing that both parents love the children, and are able to provide them with the proper attention and care that they need. In fact, Edith Stafford, the children's maternal great-grandmother, testified that she believed the children "would be taken care of with either one of them[.]" Moreover, both the appellant and the appellee acknowledged that they each consider the other to be a loving parent to the children.

There was also testimony regarding the children's relationship with their parents' spouses. There was no dispute that the children had developed a good relationship with the appellee's second husband, but there was some question as to whether they had established a good relationship with the appellant's second wife.[3] However, at the time of the hearing on March 26, 1990, the appellant had separated from his second wife, and she was no longer living in the appellant's home with the children.[4]

The family law master and the circuit court, in determining that the appellee should be awarded custody of the children, relied primarily on a provision in the settlement agreement executed by the parties which provided that:

> It is also contemplated that at a date in the future the Wife shall desire to have the care, custody and control of the said children restored to her and to have them reside with her, and she shall have the

---

2. The teachers also testified that both children are clean and sufficiently dressed, and that their hair is "fixed" very nicely by the appellant each morning before school.

3. Edith Stafford, the children's great-grandmother, testified that the children told her the appellant's second wife was "mean" to them.

4. This was the second time the appellant had separated from his second wife. The parties first separated four to five months after they were married. After the first separation, the appellant eventually reconciled with his second wife, and she moved back into his home, bringing her son and her niece into the appellant's home with her. The reconciliation, however, only lasted for approximately four months.

right to petition the Circuit Court of Barbour County, West Virginia, to change the care, custody and control of the said children to her if the parties are unable to reach an agreement concerning the change of custody.

Furthermore, both parties and the attorney who drafted the settlement agreement testified that, at the time the agreement was entered into by them, they contemplated that the appellee intended to leave the children with the appellant only until she was able to find employment and establish a home in Virginia.[5] Both parties also testified that prior to the execution of this agreement, the appellee was the primary caretaker of the children.

The appellant and the appellee have each demonstrated that they are fit to care for the children, and are able to provide them with a loving and stable environment in which to live. The record also indicates that Tonya and Amy are happy children. Furthermore, from the testimony of the teachers, it appears that Tonya and Amy are good students, both academically and socially. It is always the concern of this Court that a change of custody, where the children will be relocated to another state, will be disruptive and will require the children to make certain adjustments. However, in this case, there is evidence that the children have already established friendships with other children who live in the appellee's neighborhood, and who will be attending school with them.[6] Furthermore, the change in custody has been contemplated by the parties since the time the settlement agreement was executed. On the basis of the evidence before us, we cannot conclude that the family law master and the circuit court were clearly wrong in determining that the appellee should be awarded custody of the children.

However, we recognize that the appellant has demonstrated a genuine interest in his children's welfare and has provided them with love, attention, nourishment and support.[7] Furthermore, during the time

---

5. At the hearing held before the family law master on March 26, 1990, the appellant testified as follows:

   Q. And once this was accomplished was it not your understanding, by entering into this agreement, that she would then request to have the full custody of the children returned to her?

   A. At the time this agreement was entered into it had been stated that once she was settled that she would have, you know, she would be wanting the children back. And in the terms of this agreement it was stated that she would have the opportunity to petition the court to do so.

   Q. And then you knew that at the time you agreed to assume the custody of the children that it was your wife's—at that time Tracy was still your wife—it was her intention to leave them with you only to give her the opportunity to become settled in a stable job and environment in the state of Virginia, isn't that correct?

   A. That was her reason for going to Virginia, yes.

   Q. And you knew that at the time this agreement was entered into—you understood that that was the reason upon which she was willing to give up custody at that time? You knew that?

   A. That was the reason that was stated, yes.

   Q. And you knew that?

   A. Yes.

6. When asked whether she thought the children would have difficulty adjusting to the school, which is located two blocks from the appellee's home, the appellee responded: "No. They have been to the school. They have played on the grounds of the school. They know the children in the area, no, absolutely not."

   Furthermore, the appellee also responded to the following questions regarding friendships the children had established in Virginia:

   Q. Are there children in the development where you are living that are of the same age as your children?

   A. Yes.

   Q. During the summer of 1989 did they form friendships and contacts with any of these children?

   A. Yes, and especially the children at the school where they were staying at day camp. There was one particular little girl, Lacy, that Tonya became very friendly with, and she even stayed overnight and slumber parties and they came over to my house, yes.

7. It appears that the appellant has taken an interest in his children's education. Ms. Cleavenger testified that the appellant has "always been very cooperative in anything—with all the work we've sent home—[Amy] has a word ring—where she has to practice her words—and whenever she comes back, having taken it home, she has always been able to read those words. It's very obvious that there has been practice on these skills at home."

the children have been in the appellant's custody, he has allowed the appellee liberal visitation with the children. Thus, for these reasons, we believe the appellant is entitled to liberal visitation with his children, and we strongly encourage the parties to work out a suitable arrangement to provide for that visitation.

Since we cannot conclude from the evidence that the circuit court abused its discretion in awarding the appellee custody of the children on the basis of the parties' settlement agreement and the testimony of the parties, we conclude that the order of the Circuit Court of Barbour County shall be affirmed.

Affirmed.