504 S.E.2d 416

**Larry K. WILLIAMS, Plaintiff Below, Appellee,**

v.

**Stella Lynn (Williams) MILES, Defendant Below, Appellant.**

No. 24028.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1997.

Decided Dec. 15, 1997.

Dissenting Opinion of Justice Workman Dec. 18, 1997.

William W. Talbott, Webster Springs, for Appellant.

Howard J. Blyler, Cowen, for Appellee.

PER CURIAM: [1]

This appeal arises from an order of the Circuit Court of Webster County denying the

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188

claim of Stella Lynn Williams, the appellant/defendant, that she receive one-half of accrued overtime pay that was not previously made part of the final divorce decree. The appellant alleges it was error for the circuit court to rule that the family law master lacked jurisdiction to hear the claim. The appeal also asserts that the Court erred in its ruling that she failed to establish grounds necessary to alter the final divorce order. We affirm.

## I.

On December 13, 1989, a final divorce decree was entered dissolving the marriage of Stella Lynn Williams to Larry K. Williams, appellee/plaintiff. Part of the final decree incorporated a settlement agreement. Approximately 5 years after the divorce was finalized, Mr. Williams received an award of $19,749.93 from a civil action involving overtime pay for state troopers. The overtime pay was earned during the marriage. In February 1995, Stella Lynn Williams filed a petition to require an accounting for one-half of the overtime pay Mr. Williams received. Stella Lynn Williams' petition stated that the overtime award was not disclosed during the parties' divorce and therefore the final order must be vacated due to the mistake. The family law master recommended the overtime award be defined as marital property and subject to equitable distribution. The circuit court rejected the recommendation. In doing so, the circuit court ruled that under the applicable law in place at the time of the divorce, W.Va.Code § 48A–4–1(i)(4) (1986),[2] the family law master lacked jurisdiction to hear the claim. The circuit court also ruled that Stella Lynn Williams failed to satisfy the requirements for altering the final divorce decree. Stella Lynn Williams contends that both rulings were in error.

## II.

The standard of review for the matter sub judice is set out in Syl. Pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). *See also* Syl. Pt. 2, *Hillberry v. Hillberry*, 195 W.Va. 600, 466 S.E.2d 451 (1995). We agree with the circuit court's ruling. The circuit court ruled that W.Va. Code § 48A–4–1(i)(4) (1986) permitted the family law master to consider only petitions for changing child custody, child visitation, child support or spousal support.[3] *See* Syl. Pt. 1, *Segal v. Beard*, 181 W.Va. 92, 380 S.E.2d 444 (1989). We agree with the circuit court that the appellant failed to satisfy the general requirements for challenging a final judgment. *See Segal*, 181 W.Va. at 97–98, 380 S.E.2d at 449–450. Additionally, we find that the circuit court lacked jurisdiction to hear the claim. *See* Syl. Pt.2, *Segal.*

Affirmed.

WORKMAN, Chief Justice, dissenting:

(Filed Dec. 18, 1997)

The majority has seriously erred in its approach to this case. Contrary to the lower

---

W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) (*"Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely obiter dicta.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.").

**2.** Now found at W.Va.Code § 48A–4–6(a)(5) (1996).

**3.** During the hearing before Judge Cline in February, 1996, counsel for both parties acknowledged that both Stella Lynn Williams and Larry K. Williams *knew* that the overtime pay case was pending; both parties *knew* that Larry K. Williams had originally "opted out" of the case. (Emphasis added). It was some 5 years after the final decree was entered that the state troopers' case became a "class action" and Larry K. Williams automatically became a member of the class. Only then, did Larry K. Williams become eligible for and received the overtime payment.

Both parties were fully aware of the state troopers overtime case at the time of the final divorce and settlement agreement. Ms. Williams should have made her claim at that time. Therefore, there was no mistake within the meaning of the statute and no grounds for modification pursuant to *Segal*. Nor do the facts of this case bring it within the reach of W.Va.Code § 48–2–33(f)(2); which allows a petition where a party has "deliberately" or "negligently" failed to disclose assets.

court's and the majority's characterization, Appellant did not seek to *modify*[1] the property settlement agreement. Procedurally, Appellant sought to require Appellee to account for a marital asset[2] that was earned during the course of the marriage, but not acquired by Appellee until after the divorce was finalized, and had *not* been included as a potential asset by Appellee in his financial disclosure during the divorce proceedings. The majority makes much of the fact that five years passed before Mrs. Miles made her claim. However, within *one month* of it coming to Appellee's attention that her former husband had become entitled to the back pay award, Appellant filed her motion, not to modify the prior settlement agreement but to require her ex-husband to disclose to the court the amount of this after-acquired asset and to seek her half of the back pay award.[3] The petition filed by Appellant was not styled as a petition for modification, nor did it sound in modification. Instead, Appellant sought to bring to the court's attention the fact that Appellee provided inaccurate information in his financial disclosure.

The majority wrongly relies on *Segal v. Beard,* 181 W.Va. 92, 380 S.E.2d 444 (1989), to conclude that the formerly approved property settlement agreement cannot be set aside. While *Segal* clearly stands for the proposition that a *circuit court lacks jurisdiction to modify* a divorce decree involving a property settlement when the modification proceeding does not involve alimony, child support, or child custody, it does not bar the circuit court from addressing division of an asset when there is evidence of mistake, coercion, fraud, or any other ground which would ordinarily permit the vacation of a court order to prevent the operation of an

injustice. In *Segal* one party sought to modify the previously agreed upon usage schedule of a condominium and to address certain tax liabilities associated with that marital asset. For the majority to rely on *Segal* to resolve this case simply defies logic, especially when the marital asset at issue here was never considered below.

The law is clear that a property settlement agreement should be set aside if it was entered into based on fraud. *See Gangopadhyay v. Gangopadhyay,* 184 W.Va. 695, 699, 403 S.E.2d 712, 716 (1991); *see also Buckler v. Buckler,* 195 W.Va. 705, 466 S.E.2d 556 (1995) (recognizing circuit court's obligation arising under West Virginia Code §§ 48–2–33 and 48–2–16(a) "to investigate the financial resources or circumstances of the parties"). Even if the representations were true at the time made, there remains a continuing obligation to supplement with accurate information. Furthermore, West Virginia Code § 48–2–33(2) provides:

> If any party deliberately or· negligently fails to disclose information which is required by this section and in consequence thereof any asset or assets with a fair market value of five hundred dollars or more is omitted from the final distribution of property, the party aggrieved by such nondisclosure *may at any time* petition a court of competent jurisdiction to declare the creation of a constructive trust as to all undisclosed assets, for the benefit of the parties and their minor or dependent children. . . .

The record in this case certainly suggests that Appellee may have at minimum been negligent in failing to disclose his potential entitlement to the overtime back pay award that resulted from the *Cordle*[4] ruling. Ac-

---

**1.** A *petition for modification is a special breed of* pleading in domestic law, based on West Virginia Code § 48–2–15(e)(1996), and a whole line of case law. It carries with it more legal import than simply changing or altering an order. Mod-. ification in the domestic arena refers to a petition to change a final divorce order based on a change of circumstances. *See Gardner v. Gardner,* 184 W.Va. 260, 400 S.E.2d 268 (1990); *Lambert v. Miller,* 178 W.Va. 224, 358 S.E.2d 785 (1987).

**2.** The pleading that Appellant filed was styled "Motion for Accounting of Marital Asset."

**3.** The decision was reached awarding the back pay in January 1995 and Appellant filed her motion seeking an accounting on February 10, 1995.

**4.** The majority opinion recites that "it was some 5 years after the final [divorce] decree was entered that the state troopers' case became a 'class action' and Larry K. Williams automatically became a member of the class." Majority opinion at 367 n. 3. The *Cordle* case was in fact a class action from the very beginning, long prior to the conclusion of this divorce, and it *was* necessary to opt into the litigation. Those who did not opt

cordingly, the circuit court had jurisdiction under West Virginia Code § 48–2–33(2) to address the asset at issue here.

The majority has presented Appellee with a major windfall. Even more alarming, however, is the possibility that the majority's opinion will have the undesired effect of fostering false financial disclosures and discouraging parties from supplementing the information they provide in financial disclosures. If a party provides false (or even mistakenly erroneous information) and they can just let enough time pass, it appears the wrongdoer once again gets rewarded.

For the foregoing reasons, I respectfully dissent.

in originally were later permitted to do so after filing a motion to intervene. *See Gribben v. Kirk,* 195 W.Va. 488, 466 S.E.2d 147 (1995). Thus, Mr. Williams clearly had to take affirmative action to participate in the *Cordle* judgment.