496 S.E.2d 194

**James Walter ARMSTRONG, Plaintiff Below, Appellee,**

v.

**Mary Katherine ARMSTRONG, Defendant Below, Appellant.**

**No. 24033.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 1997.

Decided Oct. 24, 1997.

---

**4.** *See* note 2, *supra.*

**5.** *See* note 3, *supra.*

Mark A. Swartz, Crystal S. Stump, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellant.

Edward L. Bullman, Bullman & Bullman, Charleston, for Appellee.

## PER CURIAM [1]:

This is an appeal from a ruling on a contempt petition filed in the Circuit Court of Boone County by Mary Katherine Armstrong, appellant/defendant. Ms. Armstrong filed the contempt petition to recover monies Mr. Armstrong, appellee/plaintiff, owed to her under a final divorce decree. The circuit court denied the relief and ruled that Mr. Armstrong was entitled to certain offsets. Ms. Armstrong argues that it was error for the circuit court to award Mr. Armstrong offsets in a contempt proceeding. We agree and reverse.

### I.

The contempt proceeding resulted from a final divorce decree entered by the Honorable Judge E. Lee Schlaegel, Jr., on April 25, 1994. The final divorce order obligated Mr. Armstrong to pay to Ms. Armstrong $165,000 as part of the equitable distribution; to make contributions to a pension fund for the period in which Ms. Armstrong was employed by Mr. Armstrong; [2] and to pay Ms. Armstrong's attorney fees in the amount of $2,500.

On May 12, 1994, Ms. Armstrong filed a petition for contempt against Mr. Armstrong after he failed to comply with the aforementioned conditions of the divorce decree. Prior to a hearing on the contempt petition, Mr. Armstrong tendered a certified check to Ms. Armstrong in the amount of $149,000. Mr. Armstrong claimed entitlement to an offset of approximately $18,625 under the final divorce decree. Judge Schlaegel recused himself from hearing the contempt petition. The Honorable Judge Jay Hoke assumed the role of presiding judge.

Mr. Armstrong contended that he was entitled to an offset for the 1990 Buick automobile awarded to Ms. Armstrong under the final divorce decree because the Armstrong's funeral business owned the vehicle. The amount paid from the funeral home business for the automobile was $12,000. Mr. Armstrong also argued that he was entitled to an offset of $6,625 for rental income received by Ms. Armstrong from property owned by both parties.[3] Mr. Armstrong also contended that for the year 1991 the funeral home, which had employed Ms. Armstrong, made no pension fund contributions. Therefore, Mr. Armstrong asserted no pension fund money was owed to Ms. Armstrong for the year 1991.

On September 11, 1996, Judge Hoke entered a final order ruling on the petition for contempt. Judge Hoke ruled that Mr. Armstrong was entitled to an offset of $12,000 for monies paid on the vehicle which was ultimately awarded to Ms. Armstrong; that Mr.

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) ("Per curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely obiter dicta.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.").

2. Ms. Armstrong's reply brief clarifies that the pension plan was a profit sharing plan.

3. Ms. Armstrong *does not* raise this as an issue on appeal.

Armstrong was entitled to an offset of $6,625 for the rental income received by Ms. Armstrong from property owned by both parties; and that Ms. Armstrong had been fully paid her equitable distribution by Mr. Armstrong's payment of $149,000.

Ms. Armstrong then prosecuted this appeal. Ms. Armstrong assigns as error the offset of $12,000 for the Buick and the failure of the circuit court to order Mr. Armstrong to make contributions to the pension fund on her behalf for the year 1991.

## II.

■ This Court applies a three-pronged standard of review for civil contempt orders. The contempt order is reviewed for an abuse of discretion; a clearly erroneous standard is applied to the underlying factual findings; and de novo review is made of questions of law and statutory construction. Syl. Pt. 1, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996).

■ Ms. Armstrong contends that this case is controlled by the doctrine of "law of the case." The essence of this doctrine is that a court of general jurisdiction, not sitting as an appellate court, may not overrule the decision of another court of general jurisdiction. *See Chesapeake & W.R. Co. v. Washington C. & St. Louis R'y,* 99 Va. 715, 40 S.E. 20, 21 (1901) ("[T]he proceedings of a court of general and competent jurisdiction cannot be properly impeached and re-examined collaterally by a distinct tribunal, one not sitting in exercise of appellate power."). We disagree with Ms. Armstrong on the law applicable to this proceeding. The question before this Court is not whether Judge Hoke overruled a decision by Judge Schlaegel. In fact, Judge Schlaegel recused himself from hearing the contempt petition and therefore made no ruling on the contempt petition. Judge Hoke was then assigned to hear the contempt petition. Therefore, properly framed, the question is whether the circuit court could modify the division of marital property after entry of the final divorce order. We think not.

The disposition of this case is guided by the principles set forth in *Segal v. Beard,* 181 W.Va. 92, 380 S.E.2d 444 (1989). In *Segal* the former husband filed a petition to modify marital property rights that were outlined in the final divorce decree. The circuit court modified marital property rights subsequent to the entry of the final order. In reversing the circuit court's ruling we held that:

> [i]n a divorce action ... a judgment providing for, or approving the parties' agreement as to, the property rights of the respective parties ... may not be modified or vacated after it becomes final, in the absence of fraud, coercion, mistake or other grounds on which judgments in general may be modified or vacated.

*Id.,* 181 W.Va. at 97–98, 380 S.E.2d at 449–50.

■ We went on to say in syllabus point 2 of *Segal,* "[a] circuit court lacks jurisdiction under W.Va.Code, 48–2–15(e) [1986] to modify a divorce decree when the modification proceeding does not involve alimony, child support or child custody."

We stated in *Segal* that:

> [t]he appropriate procedure for obtaining post-judgment relief from a decree dividing marital property is a motion, addressed to the general equity jurisdiction of the circuit court, for relief from judgment, pursuant to W.Va.R.Civ.P. 60(b).... Alternatively, as mentioned in W.Va. R.Civ.P. 60(b), an aggrieved party may bring an independent action seeking equitable relief from a final judgment.

*Id.,* 181 W.Va. at 98–99, 380 S.E.2d at 450–51 (citations omitted).

In the instant proceeding, Mr. Armstrong could not seek modification of the divorce decree's marital property distribution in a contempt proceeding brought by Ms. Armstrong to enforce the decree. A challenge to the payment of $165,000, attorney fees and the 1991 pension fund, had to be made by a Rule 60(b) motion. Therefore, the circuit court lacked subject matter jurisdiction in the contempt proceeding to modify the marital property distribution award made in the final divorce decree.

■ The contempt proceeding in this case was civil. We indicated in syllabus

point 2 of *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 276 S.E.2d 812 (1981), that:

[w]here the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil.

We also held in syllabus point 3 of *Michael* that:

[t]he appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order.

■ We indicated in *Moore v. Hall*, 176 W.Va. 83, 85 n. 2, 341 S.E.2d 703, 705 n. 2 (1986), that "a person cannot be found in contempt of court for failure to make court-ordered payments, unless such person had the ability to pay and willfully refused to do so." Based upon the record before us we are unable to determine whether Mr. Armstrong had the ability to pay the balance of the monies owed under the divorce decree. On remand the circuit court is instructed to make a fact specific determination of whether Mr. Armstrong had the ability to pay the full terms of the divorce decree prior to the contempt proceeding being initiated. No other determination need be made. If Mr. Armstrong had such ability to pay, the circuit court is instructed to hold him in civil contempt with an appropriate sanction until the monies owed under the divorce decree are paid in full.

For the foregoing reasons, this case is reversed and remanded with instructions.

Reversed and Remanded.