707 S.E.2d 41

**Barbara Ann CARPENTER, Respondent Below, Appellant**

v.

**Charles Arthur CARPENTER, Jr., Petitioner Below, Appellee.**

**No. 35631.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 2011.

Decided Feb. 15, 2011.

---

W. Bradley Sorrells, Robinson & McElwee, Charleston, WV, for Appellant.

Michael J. Del Giudice, Keisha D. May, Charleston, WV, for Appellee.

PER CURIAM:

Barbara Ann Carpenter, appellant/respondent below, appeals from an order of the Circuit Court of Putnam County, denying her petition for appeal from a contempt order of the Family Court of Putnam County. The family court's contempt order required the sale of Ms. Carpenter's home by her former husband, Charles Arthur Carpenter, Jr., appellee/petitioner below. Here, Ms. Carpenter argues that the family court erred in finding her in contempt and ordering the sale of her home. After a careful review of the briefs, the record submitted on appeal, and listening to the arguments of the parties, we reverse.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The parties were married on June 21, 1986.[1] On September 28, 2007, Mr. Carpenter filed a petition for divorce. By order entered March 10, 2008, the family court granted the parties' request for a divorce. The divorce order granted Ms. Carpenter possession of the marital home. The order required Ms. Carpenter to attempt to refinance the first mortgage on the home. If successful, she was to pay Mr. Carpenter $20,000. The order further stated that if Ms. Carpenter was not successful in refinancing the home, she would be solely responsible for the debt on the first mortgage, and jointly liable for an apparent second mortgage on the home.

On February 10, 2009, Mr. Carpenter filed a petition for contempt with the family court. In the petition, Mr. Carpenter alleged that Ms. Carpenter was in contempt of the divorce order because she had failed to refinance the home. The petition also alleged that Mr. Carpenter was unable to obtain a loan for a new home because Ms. Carpenter had failed to refinance the marital home. It was further alleged in the petition that the marital home had been in foreclosure several times since the divorce was granted.

After a rule to show cause was issued, Ms. Carpenter responded to the contempt petition. Ms. Carpenter argued that she was not in contempt of the final divorce order because that order did not require her to refinance the home. The order required her to attempt to refinance the home. Ms. Carpenter further alleged that she did attempt to refinance the home with a bank, but her application was denied.[2] Ms. Carpenter denied that the home had been in foreclosure since the divorce.

Following a hearing on the petition, the family court entered two orders. The first order, entered on April 14, 2009, was an agreed order wherein the parties stipulated that Mr. Carpenter would relinquish his entitlement to $20,000 under the divorce order. In exchange for the relinquishment, Ms. Car-

---

1. The parties had one child during the marriage.

2. Additionally, Ms. Carpenter alleged that two other financial institutions informed her that, because of her income and credit history, she did not meet the minimum requirements for refinancing. Those institutions advised her to wait a year or so before applying for refinancing so that she would not be penalized by the denial of additional applications. Further, it was alleged by Ms. Carpenter that any negative impact on Mr. Carpenter's credit history was due to his "recent" Chapter 7 bankruptcy.

penter agreed to be solely responsible for payment of the second mortgage, as well as the first mortgage.

On April 17, 2009, the family court entered a second order. In that order, the family court found that Ms. Carpenter was not in contempt of the divorce order because she did attempt to refinance the home. The order required Ms. Carpenter to attempt to seek refinancing again by July 1, 2010, and annually thereafter until the home is refinanced. The order also indicated that the court was concerned about late payments on the mortgage by Ms. Carpenter, and stated that "any future delinquency in payments ... will be grounds for ordering the house sold."

On August 31, 2009, Mr. Carpenter filed a second petition for contempt. In the petition, Mr. Carpenter alleged that a mortgage payment was due on July 1, 2009, but was not paid until July 19th. Mr. Carpenter further alleged that the mortgage payment due August 1, 2009, had not been paid as of August 28th. For these two grounds, Mr. Carpenter requested the court hold Ms. Carpenter in contempt and order the home sold.

After a rule to show cause was issued, Ms. Carpenter responded to the contempt petition. Ms. Carpenter alleged that "[i]n no month since the entry of [the] Court's Order ..., has a payment been 30 days late: not in May; not in June; not in July; not in August; and not in September."

After a hearing on the second contempt petition, the family court entered an order on October 5, 2009. In that order, the family court found Ms. Carpenter was twenty-eight days late in her August payment. The court determined that Ms. Carpenter's explanation for the late payment, that she had to prioritize the payment of household bills, was "willful and contumacious contempt of Court." The order also found that, during the first contempt hearing, Ms. Carpenter lied to the court by stating that all the house payments were current. Further, the order found Ms. Carpenter lied about when she gets paid. Additionally, the order indicated that Ms. Carpenter failed to show that Mr. Carpenter was not harmed by her late payments. As a result of these findings, the court found Ms. Carpenter in contempt of its April 17, 2009, order, and ordered the home to be sold.[3] Moreover, the order indicated that, because of the "friction" caused by the late mortgage payments, it was in the best interest of the parties' child to have the home sold.[4]

Ms. Carpenter appealed the contempt order to the circuit court. By order entered November 18, 2009, the circuit court denied the petition for appeal. Thereafter, this appeal was filed.

## II.

### STANDARD OF REVIEW

■ In the single Syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004), this Court explained:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

*See also* Syl. pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In reviewing the findings of fact and conclusions of law of a ... court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.").

**3.** The order authorized Mr. Carpenter to retain a realtor to sell the home. Additionally, the order stated that Ms. Carpenter could purge the contempt by exercising the option of incarceration until she could post adequate security for future timely payments. The order indicated that Ms. Carpenter declined the option of confinement and posting security.

**4.** At the time of the second contempt proceeding, the parties' child was approximately seventeen years old.

### III.

### DISCUSSION

In this proceeding, we are called upon to decide whether the evidence was sufficient to allow the family court to find Ms. Carpenter in contempt and to order the sale of her home.[5] Mr. Carpenter filed a petition for contempt on the sole grounds that Ms. Carpenter did not make her mortgage payments for July 1, 2009 and August 1, 2009 on the due dates.[6] Ms. Carpenter does not dispute the fact that the payments for those two dates were made late. Ms. Carpenter contends that the "agreed order" entered on April 14, 2009 did not require her to make timely mortgage payments. Ms. Carpenter is correct. However, the family court's order of April 17, 2009, did, in fact, state that if Ms. Carpenter was delinquent in mortgage payments the home would be sold. Insofar as the April 17 order required Ms. Carpenter not to be delinquent in her mortgage payments, and Ms. Carpenter admits to making two late mortgage payments, we find Ms. Carpenter did violate the family court's order.

■ Ms. Carpenter informed the court that the payments were late because she had to prioritize the payment of monthly bills. In holding Ms. Carpenter in contempt for violating its order, the family court found her explanation showed that her conduct was willful and contumacious. We disagree.

A case which illustrates our belief that Ms. Carpenter's late payments were not willful and contumacious is *State ex rel. Canada v. Hatfield,* 163 W.Va. 548, 258 S.E.2d 440 (1979). In *Canada,* the defendant was held in contempt for failure to make court ordered child support payments. The defendant was incarcerated until he purged himself of the contempt. The defendant filed a habeas corpus petition with this Court seeking to be released from jail. In reviewing the record, this Court found that the defendant was in poor health, unemployed, and without a source of income. Based upon these facts, we held in *Canada:*

> The record contains no evidence which constitutes proof of a contumacious attitude on relator's part. In fact, the evidence establishes that his failure to pay was due to his inability to pay. In the absence of proof of a contumacious attitude the trial court abused its discretion by finding relator in contempt and ordering his imprisonment.

> We also find the court abused its discretion by sentencing relator to imprisonment until he paid the arrearage when the evidence indicated the absence of any ability to pay and purge himself of the contempt.

*Canada,* 163 W.Va. at 550, 258 S.E.2d at 441. *See In re Jones,* No. 10–CA–66, 2010 WL 4486227, at *11 (La.Ct.App. Nov.9, 2010) ("To find a person guilty of . . . contempt, it is necessary to find that he violated the order of court intentionally, knowingly and purposefully, without justifiable excuse.").

---

**5.** The parties do not dispute the fact that the family court has civil contempt powers. The civil contempt authority of the family court is set out under W. Va.Code § 51–2A–9 (2001) (Repl. Vol.2008). This statute provides:

(a) In addition to the powers of contempt established in chapter forty-eight of this code, a family court judge may:

(1) Sanction persons through civil contempt proceedings when necessary to preserve and enforce the rights of private parties or to administer remedies granted by the court;

(2) Regulate all proceedings in a hearing before the family court judge; and

(3) Punish direct contempts that are committed in the presence of the court or that obstruct, disrupt or corrupt the proceedings of the court.

(b) A family court judge may enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to

compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant. Sanctions must give the contemnor an opportunity to purge himself or herself. In selecting sanctions, the court must use the least possible power adequate to the end proposed. A person who lacks the present ability to comply with the order of the court may not be confined for a civil contempt. Sanctions may include, but are not limited to, seizure or impoundment of property to secure compliance with a prior order. Ancillary relief may provide for an award of attorney's fees. *See also* W. Va. R. Prac. & Proc. Fam. Ct. 21 (setting out procedure for contempt hearing).

**6.** This Court's review is limited because the parties did not submit a transcript of the contempt hearing.

In the instant proceeding, there is no dispute that Ms. Carpenter, in fact, made the mortgage payments for July and August of 2009. Ms. Carpenter's only mistake is that she made the payments late. Ms. Carpenter's explanation for making the payments late, in essence, was that her income is limited and that, in order to pay all of her monthly bills, some bills had to be paid late. This explanation echoes a pattern that can be found in many American households. For the family court to punish Ms. Carpenter by taking her home for not having the ability to pay all of her monthly bills *on time* is an abuse of discretion.[7] Further, this Court has made clear that "[a] party may not ordinarily be held in contempt for failure to perform an act that the party is unable to legally perform, if the evidence establishes that the party's inability to legally perform the act is not the party's fault." Syl. pt. 2, *Watson v. Sunset Addition Prop. Owners Ass'n, Inc.*, 222 W.Va. 233, 664 S.E.2d 118 (2008). *See also Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir.1998) ("A contemnor may be excused because of an 'inability' to comply with the terms of the order."); *Ream–Nelson v. Nelson*, No. WD 71811, 2010 WL 4607403, at *1 (Mo.Ct.App. Nov.16, 2010) ("Father's inability to refinance the house or make the car payment was not willful and was due to Father's financial and business difficulties, and was, therefore, not contemptuous.").[8]

In order to support its decision to find Ms. Carpenter in contempt, the family court expressly held that Ms. Carpenter

failed to show that Mr. Carpenter was not harmed by her late payments. This finding by the court improperly shifted Mr. Carpenter's burden of proof to Ms. Carpenter.

In civil contempt proceedings that do not involve child support arrearage, courts have recognized that "the general rule is that the burden of proof rests with the complaining party to demonstrate ... that the defendant is in noncompliance with a court order." *Lachat v. Hinchliffe*, 769 A.2d 481, 488 (Pa.Super.Ct.2001) (citations omitted). Additionally, "the moving party is required to demonstrate that the alleged contempt prejudiced his or her rights." *Sieger v. Sieger*, No. 6975/98, 2007 WL 2756966, at *9 (N.Y.Sup.Ct. Aug. 16, 2007). When a complaining party establishes that a court order was violated and prejudice flowed therefrom, "[t]he burden then shifts to the nonmoving party to establish any defense he or she may have[.]" *Townsend v. Townsend*, No. 08CA9, 2008 WL 5265677, at *5 (Ohio Ct.App. Dec.5, 2008).

In this proceeding, Mr. Carpenter merely showed that Ms. Carpenter was late in making two mortgage payments.[9] Mr. Carpenter did not present any evidence that he was harmed by such late payments.[10] Assuming, for the sake of argument, that the family court properly found Ms. Carpenter to be in contempt, absent any proof that there was substantial harm to Mr. Carpenter, it would have been an abuse of discretion to require the sale of the home.[11]

---

7. Insofar as we do not find that the record supported holding Ms. Carpenter in contempt, we need not address issues she raised regarding the authority of the court to order the sale of her home, and the court's alleged failure to allow her to purge the contempt finding.

8. The facts of the instant case are distinguishable from our decision in *Donahoe v. Donahoe*, 219 W.Va. 102, 632 S.E.2d 42 (2006), wherein we affirmed, in part, a family court order holding a former husband in contempt for failing to pay his part of a mortgage debt to the former spouse.

9. Mr. Carpenter's brief cites to numerous alleged late payments by Ms. Carpenter prior to the entry of the order for which she was held in contempt. Those alleged late payments have no relevancy because they were not subject to the court's order.

10. In the first contempt petition filed by Mr. Carpenter, he alleged that his credit rating would be harmed by late payments. The order of the family court in the second contempt proceeding specifically noted that "[t]he Court is not especially concerned with notices to credit agencies and the like, although that is important[.]"

11. Although there was apparently no evidence to show that Mr. Carpenter's credit rating was negatively affected by Ms. Carpenter's late payments, even if such evidence was presented, this fact alone would not justify ordering the sale of Ms. Carpenter's home. While we are mindful that the parties did not appeal the order that imposed a condition of the sale of the home if a mortgage payment was late, in the final analysis, we categorically disapprove of such a condition because it serves no meaningful purpose. Financial institutions to do not foreclose on homes merely

Additionally, the family court found that, because of the "friction" between the parties, it was in the best interest of the child to order the sale of the home. This Court has recognized that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted). However, we cannot logically conclude that the best interest of a child is served by ordering the sale of the child's home, merely because one parent insists upon filing contempt petitions.

Finally, the family court order found that Ms. Carpenter "lied" to the court during the first contempt hearing by stating that her mortgage payments were current at the time of the hearing. The family court found that the payment that was due during the month of the hearing, April, had not been paid at the time of hearing.[12] Subsequent to the order finding Ms. Carpenter in contempt, she attempted to present evidence to the circuit court on appeal which showed that she was, in fact, current on her payments at the time of the first contempt proceeding. The circuit court refused to consider this evidence because it was not presented to the family court. We are not concerned about the lateness of the evidence because the second contempt petition charged Ms. Carpenter with making late payments in July and August of 2009. It did not allege that Ms. Carpenter committed fraud upon the court during the first contempt proceeding. Insofar as the only issue properly before the family court concerned late payments after the first contempt hearing,[13] the issue of the truthfulness of Ms. Carpenter during that first contempt hearing was not relevant during the second contempt hearing, nor could it be the basis for holding her in contempt at that second hearing. *See State ex rel. Zirkle v. Fox*, 203 W.Va. 668, 673, 510 S.E.2d 502, 507 (1998) (" 'Due process of law requires that the party accused [of contempt] be advised of the charge and accorded opportunity to defend himself.' " (quoting *In re S.L.T.*, 180 So.2d 374, 378 (Fla.Dist.Ct.App.1965))); Syl. Pt. 2, in part, *State ex rel. Hoosier Eng'g Co. v. Thornton*, 137 W.Va. 230, 72 S.E.2d 203 (1952) ("In a prosecution for contempt of court . . ., the defendant is entitled to be fully and plainly informed of the character and cause of the accusation.").[14]

## IV.

## CONCLUSION

In view of the foregoing, the family court's order entered on October 5, 2009, which found Ms. Carpenter in contempt and ordered the sale of her home, is reversed, and the family court is ordered to dismiss the contempt petition from its docket.

Reversed.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.

Judge HUTCHISON, sitting by temporary assignment.

---

because payments are late. They foreclose because of the failure to make payments. *See Burress v. Wells*, No. 82A01-1003-DR-128, 2010 WL 4637457, at *2 (Ind.Ct.App. Nov.17, 2010) ("As to the contempt issue Court finds Mother in contempt for her failure to make [mortgage] payments, and collections efforts are affecting Father. *Mother is to make suitable arrangements to stop the collection efforts against Father, to purge herself of contempt.*" (emphasis added)).

**12.** The family court order also curiously accused Ms. Carpenter of lying to the court at the second contempt hearing. The family court found that Ms. Carpenter lied by stating that when prioritizing the payment of bills, she makes late payments when she receives her next paycheck. The family court's order concluded that Ms. Carpenter did not make a late August 2009 payment when she received her second paycheck for that month. The record refutes this finding.

**13.** This fact would explain why Ms. Carpenter did not have evidence during the second contempt hearing to refute any allegation that she "lied" during the first contempt hearing.

**14.** Ms. Carpenter also contends that the family court judge should be disqualified. The issue of disqualification is not properly before this Court. To the extent that any future litigation occurs between the parties, any effort to disqualify the family court judge must follow the procedure outlined under Rule 17 of the West Virginia Trial Court Rules for Trial Courts of Record. *See* W. Va. R. Prac. & Proc. Fam. Ct. 58.