**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**DAVID WALTER ROBERSON,**
**Respondent below, Petitioner**

**FILED**
**November 17, 2015**
**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**v. No. 14-1341** (Mineral County 13-D-120)

**TINA RENEE ROBERSON,**
**Petitioner below, Respondent**

### MEMORANDUM DECISION

The petitioner, David Walter Roberson, by counsel Agnieszka Collins, appeals the December 8, 2014, order of the Circuit Court of Mineral County, affirming a September 24, 2014, contempt ruling issued against him by the Family Court of Mineral County ("Family Court"). The respondent Tina Renee Roberson, by counsel Kelley A. Kuhn, has filed a response in support of the circuit court's order. The petitioner ex-husband argues that the Family Court modified the final divorce decree through the contempt ruling and improperly required him to pay his ex-wife's attorney's fees ($500.00) in connection with the contempt proceeding.

Upon consideration of the parties' briefs, oral argument, and the submitted record, we determine that this case fails to present a new or significant question of law. This Court further concludes that the circuit court committed no error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

At issue in this appeal is whether the Family Court's ruling in response to the respondent's petition for contempt constitutes an improper modification of the final divorce decree. In support of his position that it is a modification, the petitioner states that by the terms of the divorce decree he was required to pay $242.00 per month towards the marital debt until the former marital home was sold.[1] Under the contempt ruling, the petitioner's

---

[1]At the time of the final divorce hearing, the plan was to use any moneys obtained from the sale of the marital home to pay off the marital debt.

1

marital debt obligation is specified as a sum certain ($21,000.00) "owed at the time of the parties' divorce" and he is directed to pay $250.00 per month until such debt is fully satisfied. The petitioner cites further to the Family Court's decision to permit the respondent to move into the former marital residence when he had been given use and possession of the house under the terms of the final divorce decree. Finally, the petitioner complains that the Family Court improperly imposed a new obligation through the contempt ruling concerning the respondent's motor vehicle.

As related in the petition for contempt, following the entry of the parties' divorce decree on March 28, 2014, the petitioner immediately failed to meet many of the obligations imposed upon him by the final order of divorce. He was obligated to pay child support in the amount of $426.00 for March 2014 and $639.00 for April 2014. Because he paid neither of the first two months of child support totaling $1,065.00, the respondent held onto the petitioner's fifty-percent share of their tax refund–$918.54. After applying the tax refund to the unpaid child support, the arrearage was $146.46 at the time of the petition's filing.[2] Additional financial obligations that the petitioner failed to meet included the mortgage payment of $1,269.06[3] and the monthly payment of $242.00 to pay off his portion of the parties' marital debt.[4] The respondent further alleged that the petitioner breached his agreement to obtain medical insurance for the minor children;[5] refused to allow her to take possession of the car she was awarded[6] as well as her personal property inside the home; failed to exchange the children for scheduled visitations in a timely fashion; and failed to pay her for marital property sold pursuant to the divorce decree.

---

[2]At the time of the ruling, the unpaid child support totaled $515.46.

[3]While the petitioner paid the first two months of the mortgage payments after the divorce decree took effect, he missed the third month.

[4]When the contempt ruling was issued in September 2014, the petitioner had failed to make these payments for six consecutive months (April through August) and owed the respondent $1,452.00).

[5]Under the divorce decree, the petitioner's child support obligation was to be reduced to $270.00 a month upon his securement of medical insurance for the parties' minor children. The insurance was obtained on June 1, 2014.

[6]The respondent was awarded the parties' 2004 GMC Envoy. Outside the terms of the decree, the petitioner had agreed to perform some repairs on the vehicle necessary to permit the respondent to have the vehicle, but never completed those repairs.

During the course of the hearing held in this matter on September 11, 2014, the Family Court was apprised of the fact that the marital home would be foreclosed upon unless the outstanding mortgage debt ($2,866.24) was paid by October 4, 2014. Also disclosed was the parties' concession that there was no equity in the home and that since 2009, there had been no potential buyers for the home. When the respondent indicated during the course of the hearing that she was prepared to rectify the mortgage arrearage, the petitioner then asked for the opportunity to refinance the home and pay off the mortgage debt. In the interest of preventing foreclosure and the consequent creation of additional marital debt, the Family Court decided to give the petitioner until September 25, 2014, to either refinance the home solely in his name and remove the respondent's name from the loan documents or pay in full the mortgage debt. Absent either of those events, the petitioner was ordered to vacate the home by September 30, 2014, at 5:00 p.m. The Family Court further directed that, if the petitioner was required to vacate the marital home pursuant to the above-stated conditions, the respondent could move into the home effective October 1, 2014, bring the mortgage payments current with the opportunity to refinance the home in her name and to remove the petitioner's name from the existing loan documents.

In challenging some of the relief awarded through the contempt ruling issued by the Family Court and affirmed by the circuit court,[7] the petitioner asserts that the relief amounted to a modification of the divorce decree in violation of this Court's holding in *Segal v. Beard*, 181 W.Va. 92, 380 S.E.2d 444 (1989).[8] That case, decided under superseded statutes,[9] held that family law masters and circuit court judges could only modify

---

[7]We observe that the petitioner does not take issue with the Family Court's reduction of his child support payments from $270.00 to $200.00 a month through the contempt ruling. *See* W.Va. Code § 48-5-704 (2014) (providing authority for revision of child support awards).

[8]Through a contempt proceeding initiated by the ex-wife with regard to usage of a condominium awarded in the property settlement agreement, the circuit court clarified the divorce decree by designating specific time periods for the ex-wife's usage. *Segal*, 181 W.Va. at 94, 380 S.E.2d at 446. Following the contempt ruling, a separate motion for modification was filed by the ex-husband to address a tax liability imposed after the entry of the divorce decree. *Id.* The ex-wife appealed the family law master's modification ruling, which imposed liability for half the tax assessment, on jurisdictional grounds. *Id.* This Court agreed with the ex-wife, holding that a family law master had jurisdiction to modify prior rulings only as to issues involving child custody, child visitation, child support, or spousal support. *See Segal*, 181 W.Va. at 93, 380 S.E.2d at 445, syl. pt. 1.

[9]*See* W.Va. Code §§ 48A-4-1(i)(4) (1986); 48-2-15(e) (1986).

prior rulings when the issue sought to be modified involved child custody, child visitation, child support, or spousal support.[10] Our current and controlling domestic relations statutes not only give family court judges concurrent jurisdiction with circuit court judges over matters of divorce[11] but they expressly anticipate and provide for the revision of a final order concerning the distribution of marital property by either a family court judge or a circuit court judge. *See* W.Va. Code § 48-5-706 (2014).

Of more import to this case than the statutory changes that permit the alteration of final orders with regard to the distribution of marital property, however, is the statute that expressly provides for and grants the powers of contempt to family court judges. Under West Virginia Code § 51-2A-9 (2008 & Supp. 2015), the Legislature has granted family court judges the right to "[s]anction persons through civil contempt proceedings when necessary to preserve and enforce the rights of private parties or to administer remedies granted by the court." W.Va. Code § 51-2A-9 *(*a)(1). Critically, that power to sanction entails the following: "A family court judge may enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant." W.Va. Code § 51-2A-9(b). In granting these powers of contempt, the Legislature has further provided that "[s]anctions may include, but are not limited to, seizure or impoundment of property to secure compliance with a prior order." *Id.* The statute both contemplates and provides for an award of attorney's fees as part of the scope of relief permitted in conjunction with a finding of contempt. *Id.*

After first finding that the petitioner had failed to meet his obligations under the divorce decree with regard to making the mortgage payments, the Family Court gave the petitioner a two-week period in which to purge himself of the prospective sanction with regard to the marital home. As related above, the petitioner was provided the opportunity to remedy the mortgage arrearage and to continue living in the former marital home. Only if he failed to meet the strictures of the Family Court's directive would the petitioner have to vacate the residence and permit the respondent to take possession. In crafting an alternative approach to the potential foreclosure of the marital home, the Family Court was acting within its discretionary grant of contempt powers. Unlike the improper decision to

---

[10]With regard to the family law masters, the constraints were found to exist due to the limited jurisdictional grant extended by the Legislature. *See Segal*, 181 W.Va. at 95-97, 380 S.E.2d at 447-49. With regard to the circuit court, those constraints were recognized to arise from the statutory nature of divorce law, specifically, the provisions that address the modification of divorce decrees. *See id.* at 97-99, 380 S.E.2d at 449-50.

[11]*See* W.Va. Code 48-5-102(b) (2014).

4

force the sale of the former marital home in the instance of two late mortgage payments by the former wife in *Carpenter v. Carpenter*, 227 W.Va. 214, 707 S.E.2d 41 (2011), the Family Court in this case first sought to coerce compliance with the final order of divorce that required the petitioner to make the mortgage payments and then, only upon a failure to meet that obligation, to permit the respondent to move in, remedy the existing mortgage debt, and take over the mortgage payments. In so doing, the Family Court was responding to the exigent circumstances of a potential foreclosure and the correspondent creation of additional marital debt. As the respondent observes, the Family Court did not direct any modification with regard to the ownership of the home; it merely permitted a change of occupancy based on the respondent's stated ability to bring the mortgage debt current.

With regard to the Family Court's decision to quantify the petitioner's half of the marital debt existing and "owed at the time of the parties' divorce" as part of the contempt ruling and raise the monthly payment for rounding purposes to $250.00 a month, we do not find this de minimis $8.00 a month increase to be an abuse of discretion. The Family Court had authority under either West Virginia Code § 48-5-706 or West Virginia Code § 51-2A-9 to impose such a payment adjustment. Critically, the Family Court did not increase the preexisting marital debt. Moreover, the petitioner agreed to this minimal increase in his monthly payment obligation with regards to the previously-established marital debt during the hearing. Similarly, the petitioner agreed to allow the respondent to take possession of the vehicle she was previously awarded through the divorce decree; there was no new obligation imposed by the Family Court concerning the previously-awarded but undelivered vehicle.

Upon our careful and thorough review of this case, we do not find any abuse of discretion with regard to either the finding of contempt levied against the petitioner or the Family Court's ruling pursuant to its grant of contempt powers. Given the petitioner's failure to meet the obligations imposed by the divorce decree, we find the award of attorney's fees, expressly authorized by West Virginia Code § 51-2A-9(b), to be within the Family Court's discretion. Accordingly, the decision of the Circuit Court of Mineral County to affirm the Family Court's finding of contempt and its related ruling is affirmed.

Affirmed.

**ISSUED**: November 17, 2015

5

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry

**DISSENTING AND WRITING SEPARATELY:**

Justice Robin Jean Davis

The majority's opinion is light on the law and heavy on the result. In its eagerness to rule that the family court had the authority to modify the final divorce decree in response to Tina R.'s petition for contempt, the majority has blatantly ignored the only issue properly before this Court: Was the family court's finding of contempt against David R. valid? While David R. was behind on certain payments required by the original divorce order, the family court completely ignored its legal duty to determine whether David R.'s failure to fully satisfy his obligations under the original divorce order was due to an inability to comply with that order. It also failed to address whether Tina R. was prejudiced by David R.'s failure to make timely payments. Therefore, this case should have been remanded for findings of fact on these issues. In the instant matter, the majority utterly disregards the family court's failures and the circuit court's affirmation of the same. Without a valid finding of contempt, the family court could not consider the imposition of sanctions against David R. *See* W. Va. § 51-2A-9 (2012) (Supp. 2015). Nevertheless, the majority ignores this pivotal issue. Therefore, I dissent.

The family court's finding of contempt against David R. contravenes West Virginia Code § 51-2A-9, which provides that "[a] person who lacks the present ability to comply with the order of the court may not be confined for a civil contempt." Further, Syllabus point 2 of *Watson v. Sunset Addition Property Owners Association, Inc.*, 222 W. Va. 233, 664 S.E.2d 118 (2008), states that "[a] party may not ordinarily be held in contempt for failure to perform an act that the party is unable to legally perform, if the evidence establishes that the party's inability to legally perform the act is not the party's fault." The family court in the instant case made no findings as to David R.'s ability to make the payments at issue. This is especially important in the case *sub judice* because the family court based David R.'s financial obligations on a job he had not yet begun at the time of the final divorce hearing.

The limited record submitted to this Court provides ample evidence to question David R.'s ability to comply with the original divorce order by staying current on the required payments. David R. testified that he was trying to sell items in an effort to become current on his payments and that he was receiving less pay from his job than had been attributed by

the family court at the final divorce hearing. David R. submitted his pay stubs to the family court in support of that assertion. During the contempt hearing, when asked whether he had the ability to pay the mortgage and avoid foreclosure, David R. stated that he was making payments as "best [he] c[ould]." Further, he testified that he had spoken to a bank that agreed to refinance the home if he was able to make timely payments for six months, though he admitted that he did not have the ability to refinance the home at that time. Nevertheless, the family court's order makes no mention of these facts. In reaching its result-oriented conclusion, the majority completely disregards the family court's deficient order.

In addition to improperly ignoring David R.'s inability to comply with the original divorce order, in finding David R. in contempt the family court also wholly ignored the requirement that Tina R. establish that she was prejudiced by David R.'s violation of the original divorce order. *See Carpenter v. Carpenter*, 227 W. Va. 214, 219, 707 S.E.2d 41, 46 (2011) (per curiam) ("When a complaining party establishes that a court order was violated and prejudice flowed therefrom, '[t]he burden then shifts to the nonmoving party to establish any defense he or she may have [.]' *Townsend v. Townsend*, No. 08CA9, 2008 WL 5265677, at \*5 (Ohio Ct. App. Dec. 5, 2008)."). The family court order in the case *sub judice* simply shows that David R. was dilatory in making payments. The order fails to set forth any findings of actual harm suffered by Tina R. due to those late payments. This deficiency likewise made it improper to affirm the contempt order.

Due to the family court's failure to make the necessary factual findings to support its finding of contempt, the case *sub judice* should have been remanded. *See Henry v. Johnson*, 192 W. Va. 82, 85, 450 S.E.2d 779, 782 (1994) ("[T]his Court has recognized that when a record is unclear and factual development would aid in reaching the correct decision, a remand is warranted."); *Patricia Ann S. v. James Daniel S.*, 190 W. Va. 6, 14, 435 S.E.2d 6, 14 (1993) (per curiam) ("This Court has recognized when the record is unclear and factual development would aid in reaching the correct legal decision, a remand is warranted: 'When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development.'" (internal citations omitted)); *Allen v. Allen*, 173 W. Va. 740, 746, 320 S.E.2d 112, 118 (1984) ("As a final matter, we note that the record and the custody decree in this case are utterly devoid of findings of fact and conclusions of law with regard to the critical issues involved in any child custody case. . . . [T]he record reveals no statement of the factual basis for the court's conclusion that the appellant was unfit to have custody. We have repeatedly held that the failure of a trial court to state on the record its findings of fact and conclusions of law violates Rule 52(a) of the West Virginia Rules of Civil Procedure. . . . On remand this deficiency should be corrected.").

A case similar to the instant matter addresses two of the deficiencies found in the

majority opinion, namely, the failure to consider David R.'s ability to pay and the lack of factual findings in the family court's order. *See Armstrong v. Armstrong*, 201 W. Va. 244, 496 S.E.2d 194 (1997) (per curiam). In the *Armstrong* case, Ms. Armstrong filed a petition for contempt against Mr. Armstrong after he failed to comply with conditions of the divorce decree. *Id.* at 246, 496 S.E.2d at 196. Prior to the hearing on the contempt petition, Mr. Armstrong tendered a certified check to Ms. Armstrong for almost the total amount owed as part of the ordered equitable distribution. *Id.* During the contempt proceeding, he argued that he was entitled to two offsets and that Ms. Armstrong was not entitled to pension fund money the trial court had determined was owed to her. *Id.* The judge entered an order finding that Mr. Armstrong was entitled to certain offsets and that Ms. Armstrong had received her full equitable distribution. *Id.* at 247, 496 S.E.2d at 196-97. Ms. Armstrong appealed that order to this Court, and, after finding that the lower court could not modify the division of marital property in a contempt proceeding after entry of the final divorce order, this Court went on to state that "a person cannot be found in contempt of court for failure to make court-ordered payments, unless such person had the ability to pay and willfully refused to do so." *Id.* at 47-48, 496 S.E.2d at 197-98 (quoting *Moore v. Hall*, 176 W. Va. 83, 85 n. 2, 341 S.E.2d 703, 705 n. 2 (1986)). We observed further that

> [b]ased upon the record before us we are unable to determine whether Mr. Armstrong had the ability to pay the balance of the monies owed under the divorce decree. On remand the. . . court is instructed to make a fact specific determination of whether Mr. Armstrong had the ability to pay the full terms of the divorce decree prior to the contempt proceeding being initiated.

*Id.* at 248, 496 S.E.2d at 198. The procedural history of *Armstrong* is substantially similar to the instant case, and the majority in this matter should have followed the simple roadmap set forth by this Court in *Armstrong*.

Despite the breadth of the authority requiring this Court to remand this matter for the required factual development, the majority dwells on David R.'s dilatory payments in order to improperly reach the issue of modification, finding that modification was an appropriate sanction for David R.'s contempt. While West Virginia Code § 51-2A-9(b) permits the imposition of sanctions upon a finding of contempt, as set forth herein, the family court erroneously made its contempt finding without making sufficient findings to support such a ruling. Further, that statute requires the family court to "use the least possible power adequate to the end proposed." *Id.* Entering a judgment against David R. and possibly ordering him out of his marital home with less than one month to secure new housing is clearly a modification of the original divorce order that cannot possibly be construed as the use of the "least possible power." *Id.*

It has long been held that,

> [i]n a divorce action, except when the rule is altered by statute, a judgment providing for, or approving the parties' agreement as to, the property rights of the respective parties – unlike a judgment governing alimony – may not be modified or vacated after it becomes final, in the absence of fraud, coercion, mistake or other grounds on which judgments in general may be modified or vacated. 27C C.J.S. *Divorce* § 594 (1986) (collecting cases from approximately thirty jurisdictions deciding the issue). *See also* 2 H. Clark, *The Law of Domestic Relations in the United States* §§ 19.13, at 465-66, 16.1, at 179, and 17.6, at 275 (2d ed. 1987) . . . .

*Segal v. Beard*, 181 W. Va. 92, 97-98, 380 S.E.2d 444, 449-50 (1989). There is no question that family courts have the authority to modify final divorce orders.[12] However, family courts may not do so under the guise of a contempt proceeding. Unfortunately, the majority chose to sweep existing case law under the rug in order to reach its desired result. I will not accede to either the family court's, the circuit court's, or this Court's majority's blatant disregard of the family court's authority and duties.

For the foregoing reasons, I respectfully dissent.

---

[12]*See*, *e.g.*, W. Va. Code § 48-5-701 (2001) (Repl. Vol. 2014) (addressing revisions of orders concerning spousal support); W. Va. Code § 48-5-703 (2001) (Repl. Vol. 2014) (addressing revisions of orders concerning allocation of custodial responsibility and decision-making responsibility); W. Va. Code § 48-5-704 (2001) (Repl. Vol. 2014) (addressing revisions of orders establishing child support); W. Va. Code § 48-5-705 (2001) (Repl. Vol. 2014) (addressing Bureau for Child Support Enforcement's ability to seek revision of orders establishing child support); W. Va. Code § 48-5-706 (2001) (Repl. Vol. 2014) (addressing revisions of orders concerning the distribution of marital property); and W. Va. Code § 48-5-707 (2001) (Repl. Vol. 2014) (addressing reduction or termination of spousal support due to de facto marriage.).

**DISSENTING AND WRITING SEPARATELY:**

Justice Brent D. Benjamin:

I respectfully dissent from the Majority's opinion in this matter, as it is contrary to our precedent and the family court's statutory authority in contempt proceedings. By affirming the contempt order that modified the parties' divorce decree in matters not involving spousal support, child support or child custody, the lower courts exceeded their jurisdiction and committed clear error.

Upon review of the underlying family court order, I first observe that findings regarding the Husband's present ability to comply with the terms of the order are not contained within the September 24, 2014, order. "We have consistently stated that a person cannot be found in contempt of court for failure to make court-ordered payments, unless such person had the ability to pay and willfully refused to do so." *Moore v. Hall*, 176 W. Va. 83, 85 n2, 341 S.E.2d 703, 705 n.2 (1986). Such a finding is integral to any conclusion that the Husband's actions are a recalcitrant refusal to comply with the court's orders below. The family court's order must contain sufficient findings of fact and conclusions of law to allow for meaningful appellate review by the circuit court and this Court. At a minimum, I would have reversed this order because of the lack of such necessary findings.

Even assuming, however, that there had been sufficient findings in this order, the sanction imposed upon the husband by the family court is not one provided for by W. Va. Code § 51-2A-9(b) (2012). This section outlines the family court's actions in a contempt proceeding. This statute provides as follows:

> A family court judge may enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant. Sanctions must give the contemnor an opportunity to purge himself or herself. In selecting sanctions, the court must use the least possible power adequate to the end proposed. A person who lacks the present ability to comply with the order of the court may not be confined for a civil contempt. Sanctions may include, but are not limited to, seizure or impoundment of property to secure compliance with a prior order. Ancillary relief may provide for an award of attorney's fees.

10

The clear object of the family court's contempt powers is to compel compliance with the terms of the subject order. Instead of fashioning a remedy to compel the husband's adherence to the terms of the order, the family court modified the decree. However, modification simply is not a sanction available to the court for contempt.

Because the lower court modified aspects of the final divorce order that did not relate to spousal support, child support or child custody, it was clear error to award a judgment to Tina R. for David R.'s share of the marital debt and to transfer occupancy of the marital home to Tina R. In this case, the family court lacked the jurisdiction to modify the divorce decree insofar as the modifications involved matters other than spousal support, child support or child custody. As we held in Syllabus point 1 in *Segal v. Beard*, 181 W. Va. 92, 380 S.E.2d 444 (1989), "a [family court] lacks jurisdiction to hear a petition for medication of an order when the modification proceeding does not involve child custody, child support or spousal support. W.Va. Code, 48A-4-1(i)(4)." While this statutory section has been superseded, the language in W. Va. Code § 51-2A-2(a)(9) (2012) limits the family court's jurisdiction in modifying prior orders to "all motions for modification of an order providing for a parenting plan or other allocation of custodial responsibility or decision-making responsibility for a child or for child support or spousal support." The Majority attempts to limit this Court's holding in *Segal* by relying on W. Va. Code § 48-5-706 (2001). In doing so, the Majority contends that this statute and others "expressly anticipate and provide for the revision of a final order concerning the distribution of marital property by either a family court judge or a circuit court judge." A closer look at this statute, however, shows that a final divorce order may only be modified with respect to the distribution of marital property when no other means are conveniently available, and only if (1) the property is still held by the parties; (2) the alteration of the prior order as it relates to the distribution of marital property is necessary to give effect to a modification of spousal support, child support or child custody; or (3) the alteration of the terms of the prior order relating to the distribution of marital property is necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.

11