# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**July 30, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SUZANNE H.,**
**Petitioner Below, Petitioner**

**v.) No. 23-ICA-551**     (Fam. Ct. Greenbrier Cnty. No. FC-13-2018-D-153)

**LEE H.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Suzanne H.[1] appeals the Family Court of Greenbrier County's November 16, 2023, Final Order as to the Parties' Pending Petitions for Contempt, Modification, and Sanctions, which held her in contempt and granted Respondent Lee H. additional parenting time. Lee H. responded in support of the family court's decision.[2] Suzanne H. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision, but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21 of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the family court's decision is affirmed, in part, reversed, in part, and remanded to the family court with directions as set forth herein.

Suzanne H. ("Mother") and Lee H. ("Father") share one child, born in 2011. In December of 2015, Father relocated to North Carolina for employment purposes. The parties later divorced in 2018. Events leading to this appeal began when Father filed five petitions for contempt against Mother. During litigation, Hudson Forensic Psychology group conducted a court-ordered Personality Assessment Inventory test on Father in late 2021. Based on their assessment, Hudson recommended that Father's parenting time not be increased and that he have very limited interaction with Mother.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last names by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Suzanne H. is represented by Mike Kelly, Esq. Lee H. is represented by Brandon L. Gray, Esq.

1

Eventually, the parties entered into an Agreed Parenting Order on March 29, 2022. In that order, Mother was designated as the primary custodial parent with shared decision-making, Father was ordered to begin therapy, and the following parenting schedule was adopted:

- Father was allocated the first weekend of each month during the school year, with visits taking place at his home in North Carolina. If the child had a school function during Father's weekend, the parties were to schedule parenting time for a different weekend.
- Spring break was allocated to Mother during even years and Father was given the odd years.
- Thanksgiving was allocated to Mother on odd years and Father had the even years.
- For Christmas, during even years, Mother had the first half and Father had the second half. The parties were to do the reverse during odd years.
- Father was allocated Labor Day.
- Mother was allocated Memorial Day and Martin Luther King, Jr. Day.
- All other minor holidays were allocated to the parent according to the regular and summer schedule.
- During months when Father had extended holiday time, he had the option of spending one overnight in West Virginia with seventy-two hours' notice to Mother.
- The parties had a 50-50 plan for summer break.
- Father was given two FaceTime calls per week and one phone call.

On July 21, 2022, Father filed another petition for contempt against Mother, wherein he requested that Mother be fined and/or incarcerated, post a $10,000 bond, and pay Father's attorney's fees for violating the parenting plan in various ways. On January 9, 2023, Father filed a proposed parenting plan, alleging that Mother violated the custody order multiple times, had mental health issues, urged that Mother's parenting time be supervised, and requested that the child move to North Carolina to live with him and that he be granted sole decision-making authority. Mother filed a response and counter-petition to Father's contempt petition, wherein she stated that Father filed the petition as harassment after Mother refused to go against their agreed parenting order.

On October 12, 2022, Father filed a counter-petition for custody modification wherein he alleged that Mother was alienating the child from him and requested primary custody. Mother filed a response wherein she stated that despite being invited to participate in multiple activities, Father had made no contact with the child's therapist, never participated in parent-teacher conferences, only attended one doctor's appointment in the child's entire life, attended one extracurricular activity over a five-year period, and refused to adjust his summer schedule for the child to attend a summer camp that the child wanted to attend.

2

On June 6, 2023, the family court appointed a guardian ad litem ("GAL") for the child. The GAL's report and recommendations were filed on August 27, 2023, wherein the GAL sought to expand her investigation to include interviewing the child's former teachers and current therapist. Father objected to the GAL interviewing the therapist, and the family court agreed, ruling in Father's favor. Therefore, the GAL was only able to interview the child's teachers, who found the child to be very mature for her age. The GAL also found that the child was a sufficiently mature, intelligent child and that her firm and reasonable wishes should be accommodated. Additionally, the GAL noted in her report that, upon review of the child's therapist's testimony from a prior hearing, he (Mr. Jones) had also stated that the child was sufficiently mature to decide how much time is spent with Father and that the child wished to spend less time with him. The GAL finalized her report by opining that no substantial change in circumstances had occurred since the entry of the March 29, 2022, order, that there was no evidence of parental alienation, but that the family court should modify the parties' summer parenting schedule due to the parents' inability to work out any modifications on their own. Accordingly, the GAL recommended the following modifications:

- The child should continue to visit Father on the first weekend of each month. If the child has an activity in West Virginia, the visitation should take place in West Virginia.
- The child should select the camps she wants to attend each summer. The times she is not in camp should be divided evenly between the parties.
- The child should have the autonomy to call Father at the time she desires on Tuesdays, Thursdays, and once per weekend.

A final hearing on the parties' petitions for contempt, modification, and sanctions was held on September 6, 2023. At the family court's request, the GAL met with the child again on September 8, 2023, before the entry of the final order, to discuss Christmas and summer visits with Father. The child stated that if she had to choose, she would prefer to visit Father for up to ten days as long as it allowed her to attend the summer camps of her choice. The final order was entered on November 16, 2023, and found that: (1) a transfer of primary custody was not in the child's best interest; (2) both parties were in contempt; (3) the child was sufficiently mature but her wishes did not override Father's right to have a full, meaningful relationship with her; (4) sufficient reason existed to deviate from the therapist's recommendations; and (5) both parties should post a bond to ensure future compliance with the court's orders.

Based on those findings, the family court ordered that: (1) Mother shall remain the primary custodial parent; (2) Father shall exercise parenting during one weekend per month, even if the child has to miss an extracurricular activity; (3) the child shall be allowed to attend the summer camps of her choice, and that if she chooses a day-camp near Mother's home, it shall count toward Mother's parenting time; (4) no more than two times per

3

summer, Father's time may be extended from seven to ten days to enable the parties to have equal summer parenting time; (5) once summer sports practices begin, if Father chooses not to be with the child in West Virginia, any missed time shall be forfeited; (6) all exchanges shall take place in Rocky Mount, Virginia; (7) each party shall post a $5,000 cash bond to ensure compliance with the order. The November 16, 2023, order adopted the parenting plan modifications pursuant to West Virginia Code § 48-9-402(b)(2). It is from the November 16, 2023, order that Mother now appeals.

For these matters, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, No. 22-918, 2024 WL 2966177, __ W. Va. __, __S.E.2d __ (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises eight assignments of error. First, Mother asserts that the family court clearly erred and abused its discretion by including in its final order Father's accusations and insults of Mother and her counsel. We disagree. Although Rule 6(a) of the Rules of Practice and Procedure for Family Court states, "[a]ll orders and indices are public records", the final order made it clear that the offensive language was Father's testimony, not a finding of fact or conclusion of law of the family court.[3] Therefore, we find that the family court did not abuse its discretion by including the language in the final order.

Second, Mother contends that the family court was clearly erroneous and abused its discretion by holding Mother in contempt for not complying with the extracurricular, communications, and summer vacations provisions in the March 29, 2022, Agreed Parenting Plan Order. Upon review of the record, we agree. "To find a person guilty of . . . contempt, it is necessary to find that he violated the order of court intentionally, knowingly and purposefully, without justifiable excuse." *Carpenter v. Carpenter*, 227 W. Va. 214, 218, 707 S.E.2d 41, 45 (2011) (citation omitted). Here, the family court specifically stated in its order that it "couldn't find that [Mother] intentionally violated the order" for signing up the child for cross-country, taking the child on a trip instead of signing her up for a camp in Greenbrier County, and not responding to Father's messages within 24 hours. Absent a

---

[3] Although we do not reverse on this assignment of error, we note that the offensive language was not a necessary addition to the final order. We caution family courts to avoid including invectives (reflecting merely what a party believes) in these sensitive orders when such language is unnecessary to address the matters at issue.

finding of Mother's intent to violate the family court's order, Mother cannot be held in contempt. Accordingly, we find error in the family court's ruling holding Mother in contempt and reverse.

Third, Mother argues that the family court abused its discretion by completely ignoring and dismissing the unrebutted testimony of the child's treating therapist. We disagree. A review of the family court's order shows that the family court did not completely disregard the therapist's testimony, but rather deviated from his recommendations "due to the passage of time since his testimony" and the child's "specific responses to the questions and topics discussed with her by the [GAL], particularly given [the GAL's] extensive training and experience in working with children in highly adversarial custodial matters, and the interplay between the [c]hild's best interest and the applicable law." Therefore, we cannot conclude that the family court abused its discretion here. *See In re Tiffany Marie S.*, 196 W. Va. 223, 231, 470 S.E.2d 177, 185 (1996) (A reviewing court may not overturn a family court's finding simply because it would have decided the case differently).

As her fourth assignment of error, Mother asserts that the family court abused its discretion by directing the GAL to negotiate with the child to reach an outcome different from her expressed and firmly held preferences. We disagree. The family court's order stated that it directed the GAL to consult the child to "inquire of her specific wishes in regard to summer vacations from school and her Christmas holiday." A family court judge has the responsibility for the supervision and administration of the family court and the authority to manage the business before it. *See* W. Va. Code § 51-2A-7. Additionally, Guideline 16 of the Guidelines for Guardians Ad Litem in Family Court states "The GAL shall be prepared to explain and advocate his or her assessments and recommendations in all proceedings before the Court."[4] Further, "[A] guardian ad litem has a duty to represent the child(ren) to whom he or she has been appointed, as effectively as if the guardian ad litem were in a normal lawyer-client relationship." *See Matter of Scottie D.*, 185 W. Va. 191, 198, 406 S.E.2d 214, 221 (1991). Here, the family court did not abuse its discretion by directing the GAL to inquire further about the child's wishes.

Mother's fifth, sixth, and seventh assignments of error on appeal present interrelated issues; accordingly, we consolidate her arguments as appropriate.[5] For these assignments of error, Mother contends that the family court abused its discretion by awarding Father two ten-day periods with the child in the summer, additional time during holidays, and by requiring the child to make thrice-weekly phone calls to her father, in spite of her firmly held preferences against such. We disagree. Regarding Father's additional parenting time,

---

[4] *See* Appendix B of the Rules of Practice and Procedure for Family Court.

[5] *See Bowden v. Monroe Cnty. Comm'n*, 232 W. Va. 47, 51, 750 S.E.2d 263, 267 (2013) (consolidating assignments of error).

the family court made it clear that the extra time is solely for equalizing time during the summer and that the additional holiday time was based on the child's "mature, stated wishes." Regarding the child's thrice-weekly phone calls, Mother contends on appeal that the possibility of a missed call will allow Father to manufacture another contempt petition against her. However, this argument lacks merit as it speculates as to Father's future bad behavior. The family court's order states that the child "shall have the autonomy to call her Father at the time she desires on Tuesdays, Thursdays, and once per weekend," which does not prohibit other means of communication. Therefore, we cannot conclude that the family court abused its discretion as to these assignments of error and we affirm the family court on these issues.

Lastly, Mother argues that the family court abused its discretion by refusing to give the child the autonomy to select her own extracurricular activities. We disagree. The final order states that Father's weekend visitation per month will be moved around any extracurricular activity that she has. The family court specifically enumerated several sports, artistic, and academic extracurricular activities that would displace Father's parenting time with proper notice. The only time Father's weekend would take precedence is in the event that the child has activities such that Father would receive no parenting time whatsoever. Further, the final order states that "[o]nce [the child] begins practices for any sports she selects, then she shall be in West Virginia so as to attend all of those practices and meets. If Father chooses not to be with her in West Virginia to facilitate her attendance, then his parenting time with her for those periods shall be forfeited." Thus, the child is clearly permitted to choose any activity she desires, and Father cannot use his parenting time to limit her participation in those activities during the summer and most weekends. Therefore, we decline to reverse the family court's decision with regard to this assignment of error.[6]

Accordingly, we affirm, in part, reverse, in part, and remand with directions the family court's November 16, 2023, order.

Affirmed, in part, Reversed, in part, and Remanded.


**ISSUED:** July 30, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[6] We also note that this assignment of error is not yet ripe for appeal.